GEORGE N. SEVERANCE, in equity, *vs.* ORLANDO ASH.

Penobscot. Opinion January 25, 1889.

*Equity. Cancellation. Fraud. Burden of proof.*

Where the plaintiff prays to have a deed cancelled, by reason of fraudulent misrepresentations, it is incumbent on him to prove that he was induced, by such misrepresentations, to execute the deed.

ON REPORT. Bill in equity for the cancellation of a deed, heard on bill, answer and proof. The facts are sufficiently stated in the opinion.

*C. A. Bailey*, for plaintiff.

Plaintiff was interested in the land. The mortgage, previously given by him, had not been foreclosed. Jones Mort., § 1152, mortgagee had not entered and held possession. Wild lands not capable of adverse possession. *Chandler* v. *Wilson*, 77 Maine, 76; *Hudson* v. *Coe*, 79 Maine, 83. Constructive possession not recognized. *Chase* v. *Marston*, 66 Maine, 271. To work the effect of a disseizin adverse possession is the same in equity, as in law. *Cholmondeley* v. *Clinton*, 2 Jac. & Walk. 189; *Wyncoop* v. *Demarest*, 3 Johns. Ch. 129; *Gordon* v. *Hobart*, 2 Sum. 401; *Moore* v. *Cable*, 1 Johns. Ch. 386; 4 Kent. Com. 188; *Ayers* v. *Waite*, 10 Cush. 72; Jones Mort., c. 24; *Chapin* v. *Wright*, 41 N. J. Eq. 438 note; Ang. Lim., c. 34.

Deed under which defendant and his ancestor have held was not recorded until about fifteen years before the release, in question here, was obtained. Plaintiff's rights not affected, while deed

was unrecorded. *Estes* v. *Cook*, 22 Pick. 295; *Kellogg* v. *Loomis*, 16 Gray, 48, 49; *Putman* v. *Fisher*, 38 Maine, 324.

Under a bill for relief, on the ground of fraud, court may relieve on the ground of mistake. *Reed* v. *Cramer*, 1 Green (N. J. Eq.) 277; *Berryman* v. *Graham*, 6 C. E. Green, 370; *Skillman* v. *Teeple*, Saxton (N. J. Eq.) 232; *Pooler* v. *Ray*, 1 P. Wms. 355; *Bingham* v. *Bingham*, 1 Ves. sen. 126: And allowing the mistake to be that of plaintiff alone. *Spring* v. *Hight*, 22 Maine, 408, 413; *McCarthy* v. *DeCaix*, 2 Russ. & M. 614; *Bingham* v. *Bingham, supra; Grover* v. *Perkins*, 6 Sim. 576; *Cann* v. *Cann*, 1 P. Wms. 7, 27; *Naylor* v. *Winch*, 1 Sim. & Stu. 555; *Stanley* v. *Robinson*, 1 Russ. & M. 527.

Relief granted whether mistake is one of fact or law. *Cooper* v. *Phibbs*, L. R. 2, H. L. 149; *Beauchcamp* v. *Winn*, L. R. 6, H. L. 223, 234; *Jordan* v. *Stevens*, 51 Maine, 78; Story Eq. Jur., § 120, *et seq.*

Not precluded by having consulted counsel. *Taylor* v. *Ober*, 3 Price, 300; *Murray* v. *Palmer*, 2 Sch. & Lef. 486. Actual fraud: Misrepresentation and concealment of value and quantity by defendant, ignorance of title, value, quantity and location by plaintiff. *Tyler* v. *Black*, 13 How. (U. S.) 230; *Turner* v. *Harvey*, 1 Jac. 169. Parties: *St. Johnsbury* v. *Bagley*, 48 Vt. 75; *Dunlap* v. *Stetson*, 4 Mason, 349.

*Wilson and Woodard*, for defendant.

The misrepresentation or concealment must be of something material, constituting an inducement or motive in giving the deed; about what plaintiff rightfully placed trust and confidence in defendant; and damage suffered. 1 Story Eq. Jur., §§ 190–203, inclusive, *Page* v. *Bent*, 2 Met. 371, 374; *Matthews* v. *Bliss*, 27 Pick. 48, 52, 53; *Stover* v. *Pool*, 67 Maine, 217.

Statements that right to redeem had become barred, matters of opinion, and not relied on. *Grant* v. *Grant*, 56 Maine, 573. Plaintiff's right was barred by lapse of time. *Phillips* v. *Sinclair*, 20 Maine, 269; *Blethen* v. *Dwinel*, 35 Id. 556, 561; *Hurd* v. *Colman*, 42 Id. 182, 190; *Roberts* v. *Littlefield*, 48 Id. 61, 62, 63; *Chick* v. *Rollins*, 44 Id. 104, 116.

Possession by intruder different than under color of title.

*Jackson* v. *Porter*, Paine, Rep. 457 ; Ang. Lim., § 400 ; *Proprietors* v. *Laboree*, 2 Maine, 275, 285, 286 and cases cited on p. 287. Character of possession : *Ewing* v. *Burnett*, 11 Pet. 41, 52, 53 ; *Clarke* v. *Potter*, 32 Ohio, 49, 64 ; *Fletcher* v. *Fuller*, 120 U. S. 534. Relation of parties did not justify reliance on statements of value,—were matters of opinion, (*Bishop* v. *Small*, 63 Maine, 12, 13, 14) and not relied on. Not bound to disclose sales previously made to other parties. *Matthews* v. *Bliss*, *supra*.

Plaintiff's laches : *Peabody* v. *Flint*, 6 Allen, 52, 57 ; *Bank* v. *R. R.*, 125 Mass. 490, 495 ; *Rogers* v. *Saunders*, 16 Maine, 92 ; *Sullivan* v. *P. & K. R. R.*, 94 U. S. 806, 811, 812 ; *Brown* v. *County of Buena Vista*, 95 U. S. 157, 160, 161 ; (subsequent increase in value of land) *B. & M. R. R.* v. *Bartlett*, 10 Gray, 384 ; *Holt* v. *Rogers*, 8 Pet. 420, 434.

LIBBEY, J. In his bill the plaintiff states his case in substance, as follows : On the 8th of January, 1855, he and one Goodwin purchased of Randall S. Clark a large tract of wild and uncultivated forest land on the island of Mount Desert, Hancock county, containing about three thousand acres ; and on the same day and as a part of the same transaction he and said Goodwin mortgaged the same premises to Andrew H. Hall, to secure their notes for $2500, part of the consideration for the land ; that they operated on the land till sometime in 1857, when, the notes having matured, legal proceedings were commenced against them, and, being unable to pay, they were compelled to leave the premises ; that soon after said Goodwin died, and he, the plaintiff sought employment in another state, and never afterwards returned to the vicinity of said land ; that the legal proceedings were suffered to go by default ; that he supposed said proceedings were for the purpose of foreclosing the mortgage, and that it was thereby fully foreclosed. That on the 20th of February, 1884, the defendant came to his house, in Orrington, with his attorney, and represented to him that he was the owner in fee of a lot of land in Mount Desert, which was a part of the tract bought of Clark ; that his claim of title was under the mortgage to Hall; that their deed from Clark, as the record stood, was a cloud upon his title, preventing him from showing a clear record title to the land, and

desired the plaintiff to give him a deed of release, that the record might show that he had no claim; that both the respondent and his attorney assured him he would part with nothing of any value to him; that if there had been no formal foreclosure, the lapse of time, or even the accumulation of the mortgage debt would be insuperable obstacles to redemption from the mortgage. That the respondent further represented to him that land of which he desired a release, was of little value; that it was unfavorably situated, difficult of access, mostly a barren mountain slope, and its only value was in about thirty acres of young growth; that he knew nothing of the value of the land except from his limited operations from 1855 to 1857; that it was worth but a few cents an acre when he left it, and believing in the defendant's representations, and that they were made for an honest purpose, for the nominal consideration of one dollar he executed a quitclaim deed of the premises as requested, dated February 21, 1884.

That he afterwards learned the mortgage had not been foreclosed, but that the mortgage debt had been paid by property taken in the action on the notes and timber and wood taken from the land by the mortgagee; and that the representations of the defendant were false and made to defraud him; and he prays that the court may decree the deed from him to defendant cancelled and void.

All the material allegations of representations of fact stated in the bill are denied, upon oath by the defendant, and he claims that the mortgage was foreclosed by more than twenty years possession of those claiming under the mortgage prior to the execution of the deed by the plaintiff.

To entitle him to the relief prayed for, it is incumbent on the plaintiff to prove that he was induced to execute the deed by some fraudulent representation of fact, or facts alleged in the bill.

We think the evidence on which the plaintiff relies, entirely fails to prove his case. He is a witness, and states his case more strongly than any other of his witnesses. It is only necessary to give his own statement of the case to show that he has no equity, and is not entitled to relief.

After stating that the defendant, with his attorney, called at

his house in Orrington and introduced himself, he proceeds as follows: "He said he had some business with me about that Mount Desert land; he said he had bought some of it, or that his father had, I do not recollect which; anyhow he came there as the owner of it, and wanted a release from me. I says, I do not own any land down to Mount Desert, I have no claim to any land down there. He said he had a little wood lot, and there was a cloud on his title, and by getting my name to a deed, it would make his better; it would be considerable advantage to him to have me give him an acquittal. I says I cannot, I am not going to acquit anything I do not own. One of the gentlemen says, they cannot hurt you for giving a quitclaim of anybody's farm. I says I do not want to give any quitclaim, and especially without seeing some one that knows about the business, my attorney. He pressed the matter hard and I concluded to come up here to Bangor with him. He remarked if I would go to Bucksport he would supply me with two attorneys. I did not want to go to Bucksport, so they brought me up here the next morning. They stayed at my house all night."

"Q. Was there any proposition to pay you anything for a release? A. No sir; I did not ask anything because I did not own anything. Before I promised to come up with him, he made the remark, if you do not give me a deed I will make it cost you something. I was fearful of those notes, they were all strangers to me. I had a home there and I was afraid they would sweep me out; I wanted to get rid of it as easy as I could. I came to Mr. Davis' office; he got it out of them that we had the right of redemption in the property. Mr. Deasy and Mr. Ash were both present with me in Mr. Davis' office. What I wanted to see Mr. Davis for was to confirm their statement that they could not hurt me for signing a quitclaim deed; I wanted to know whether there would be anything back of this coming up by and by."

"Q. Had you agreed to sign this before coming up here if you could do it without any trouble? A. Yes, I was willing to accommodate the gentlemen if I could do them any good."

Cross-examination. "Q. You were not very much interested in the land, did not care much about it at that time? A. I

should not suppose anybody that did not think they owned it, would be. Q. You did not care much what the value was? A. I do not see as I should care anything about the value if I did not own it. Q. You did not pay any great attention to what they said about the conditon of the land or its value? A. I did not really take any stock in it. Q. Did you care anything about it? A. I do not see why I should, if I did not have anything to do with it, did not own it. I came up here the next day with them, and went to Mr. Davis' office; Mr. Davis made the deed, I executed and acknowledged it. They went back with me to get my wife's signature to it; she signed it."

Here is no proof of inducement to execute the deed by fraudulent representations of facts. He abandoned the land to the mortgagee twenty-seven years before, and supposed the mortgage had been foreclosed, and waited till the notes had become barred by limitation. He was informed at Davis' office that he had the legal right to redeem, but all he wanted to know, was, if he confirmed the title which he had supposed the mortgagee had acquired, by a quitclaim deed, whether it would make him liable for the notes so that his home might be swept from him. His consultation with his attorney assured him on this point, and this was the only inducement he desired.

As we are forced to the foregoing conclusion on the merits of the case, we do not deem it necessary to decide the other points discussed by counsel, of non-joinder of plaintiffs and defendants, and whether the Hall mortgage had been foreclosed by twenty years adverse possession of the mortgagee and his grantees.

*Prayer of the bill denied.*

WALTON, DANFORTH, EMERY, FOSTER and HASKELL, JJ., concurred.