JOSEPH A. BUTLER *vs.* GEORGE J. MARTIN.

Suffolk.    October 17, 1923. — December 28, 1923.

Present: RUGG, C.J., BRALEY, DeCOURCY, & PIERCE, JJ.

*Deceit. Evidence,* Remoteness, Of value of corporate stock. *Practice, Civil,* Exceptions. *Words,* " Good will."

Where, at the trial of an action of tort for deceit in the sale of shares of stock in a corporation, it does not appear that the stock ever was dealt in on the market, evidence of a sale by the plaintiff two years and ten months after he purchased the stock of the defendant cannot be said to have been so remote as to have no weight to establish the value of the stock at the date when the plaintiff purchased it, and an exception to the admission of such evidence must be overruled.

An action of tort for deceit in the sale to the plaintiff of shares of the stock of a corporation was heard by auditors under an agreement that their findings of fact should be final. They found that, while representations by the defendant as to the value of the machinery were false and ought to have been known by him to have been false, nevertheless, the stock was of the value which he represented to the plaintiff that it was. They also made a finding that the corporation whose stock was sold " had a good will " not included in a certificate filed with State officers, which was of sufficient value to make up the difference between the real value of the assets " described in the certificate . . . and what it would have been had the certificate

. . . been true, and on this theory of the case we find the plaintiff has suffered no damages." The term "good will" was not used nor mentioned at the hearing before the auditors. The trial judge refused to rule that this finding by the auditors " was not justified by the evidence and must be excluded," ruled that the finding, in so far as it was based on an estimation of the value of the good will, was erroneous, and ruled that the finding, quite aside from the good will, " as the matter is presented in the report . . . must stand that the shares were worth " the full amount that the defendant represented to the plaintiff as their value. *Held*, that the plaintiff was not harmed by the trial judge's refusal to give the ruling.

At the trial of the action above described, the auditors who heard the action made no finding as to whether or not the plaintiff relied upon the alleged false representations made by the defendant. *Held*, that such a finding was essential to the maintenance of the action and could not be supplied by implication.

TORT for deceit in the sale to the plaintiff of shares of stock of Martin Manufacturing Company. Writ dated October 11, 1916.

The action was referred to three auditors under a rule which provided that their findings of fact should be final. Material findings by the auditors are described in the opinion. The action was heard upon the auditors' report by *McLaughlin*, J., without a jury. Material rulings by the judge are described in the opinion. There was a finding for the defendant. The plaintiff alleged exceptions.

*H. V. Cunningham*, for the plaintiff.

*F. P. Garland*, for the defendant.

BRALEY, J. The case having been referred to three auditors whose findings of fact were to be final, a trial was had upon the coming in of their report before a judge sitting without a jury, who found for the defendant, and the case is here on the plaintiff's exceptions to his refusal to rule as requested and to the rulings given.

It appears from the auditors' report that the plaintiff, seeking an advantageous opportunity for investment, had interviews with the defendant, who during all the negotiations was president, general manager and majority stockholder in active control of the business of the Martin Manufacturing Company, a domestic corporation. At the first interview the defendant told the plaintiff, " that the . . . company had during the last year done business to the

value of from . . . $350,000 to $400,000." But no definite representation concerning the value of the assets was made. A second interview followed at which the defendant solicited the plaintiff to take " ten thousand preferred stock and ten thousand common, and that he would be made vice-president." The character of the stock was explained by the defendant, " that the preferred was cumulative and came ahead of the common stock, and had always paid eight per cent." The plaintiff informed the defendant that since the first interview he had examined the certificate of condition filed by the company as required by statute, and " was familiar with its contents," and the certificate which was introduced in evidence showed that the machinery was valued at " $24,677.29." The plaintiff testified that the defendant then said " the figures shown in the statement filed were way below the real value of the property, that in making up those figures 'everything was shrunk to nothing;' that the property was really worth a great deal more than those figures showed, and the several items . . . in the certificate of condition were discussed in detail." The defendant's version was that " he told the plaintiff that he, Martin, had dollar for dollar in assets, . . . no good will charged in there at all, or one hundred cents on the dollar; that the assets were enough to make the common stock worth $130 a share," and the statement of condition was the same as shown on the books of the company, and " these figures were what he was talking about " when he told the plaintiff " he had dollar for dollar in assets." The defendant after some computations said to the plaintiff, that " the common stock was valued at $130 per share, and that there would be issued to him one hundred and seventy-seven shares." The defendant further said, that the common stock " was worth $130 as shown by the assets."

The plaintiff bought the stock and received certificates for seventy-seven shares of common, and one hundred shares of second preferred for which he paid the company $20,000. The defendant's representation that the stock was worth $130 a share should be considered in connection with his knowledge, full management, and control of the

corporation's affairs, and the statement, that "he had dollar for dollar in assets," and the auditors' finding, that he knew "or ought to have known" that the machinery valued in the certificate of condition at $24,677.29 was in real value worth only $7,500. *Pearson* v. *Howe,* 1 Allen, 207, 208. *Litchfield* v. *Hutchinson,* 117 Mass. 195, 198. *Kerr* v. *Shurtleff,* 218 Mass. 167, 171, 172. The auditors' general finding however is that the stock was of the value represented. The question, of course, was one of fact. *Stewart* v. *Joyce,* 201 Mass. 301. But in coming to this conclusion they admitted as evidence of value at the date of purchase, the sale by the plaintiff of the stock on March 23, 1916, for $20,800. The plaintiff having duly excepted contends that the evidence was inadmissible. G. L. c. 231, § 56. It does not appear that the stock was ever dealt in on the market, but was inactive, and we cannot hold as matter of law that the sale which took place about two years and ten months after the plaintiff bought, was so remote as to be of no probative value. *Jenkins* v. *Weston,* 200 Mass. 488. *Aldrich* v. *Aldrich,* 215 Mass. 164. *Johnson* v. *Lowell,* 240 Mass. 546, 549. The plaintiff's first request was refused rightly.

The auditors further state that if this evidence was rightly admitted they further find that on the date of purchase the company "had a good will" not included in the certificate which was "of sufficient value to make up the difference between . . . the real value of the assets" described in the certificate, and what their value would have been had the certificate been true, "and on this theory of the case we find the plaintiff has suffered no damages." The exceptions recite that the term "good will" was not used or mentioned before the auditors, and was first used in the report. It is contended that the plaintiff's second request, that this finding "was not justified by the evidence and must be excluded" should have been given. But the plaintiff has not been harmed by the judge's refusal to give it, because he states in his rulings that the finding in so far as it was based on an estimation of the value of the good will was erroneous, and he correctly ruled that the finding, quite aside from the

good will, " as the matter is presented in the report . . . must stand that the shares were worth $130." *Stiles* v. *White*, 11 Met. 356. *Thomson* v. *Pentecost*, 210 Mass. 223.

It is moreover alleged in the declaration that the plaintiff " in the purchase of said stock . . . acted in good faith in reliance upon the defendant . . . ." The absence of a finding to that effect, which is a question of fact, cannot be supplied by implication. It must be affirmatively found. If the alleged false and material representations had no influence, and the plaintiff, willing to take the chance, would have bought if they had not been made, then they were not a motive for the purchase, and he was not induced to buy by means of them. *Matthews* v. *Bliss*, 22 Pick. 48, 53. *Safford* v. *Grout*, 120 Mass. 20. *Windram* v. *French*, 151 Mass. 547. *Burns* v. *Dockray*, 156 Mass. 135, 138. *Lee* v. *Tarplin*, 183 Mass. 52, 54. *Steward* v. *Joyce*, 201 Mass. 301, 309.

The judge for the reasons stated rightly ruled that the plaintiff could not recover, and it is unnecessary to review the fourth and fifth requests which he refused to give in terms, or to determine the accuracy of subsequent rulings which were rendered immaterial by his first ruling, that on the auditors' finding as to the value of the stock shown by the sale, the plaintiff had failed to prove he had been defrauded.

*Exceptions overruled.*