GENERAL MOTORS ACCEPTANCE CORPORATION

*vs.*

LITTLEFIFLD, CROCKETT COMPANY.

Penobscot.　　　Opinion December 11, 1929.

*E. P. Murray*,
*William F. Bryne*, for plaintiff.
*Edgar Simpson*, for defendant.

SITTING: WILSON, C. J., DUNN, DEASY, STURGIS, FARRINGTON, JJ.

FARRINGTON, J. This was an action of replevin heard, without jury, by the presiding Justice at the November Term, 1928, of the Penobscot County Superior Court. Right of exceptions to matters of law reserved by both parties. Defendant pleaded the general issue and for a brief statement that (1) defendant had possession of the replevied automobiles by license and permission of the plaintiff and that no demand for possession was made by plaintiff prior to the time of the issuing of the writ or of service of same upon defendant, (2) that plaintiff's title was invalid as against defendant's trustee in bankruptcy and that the replevied automobiles should be restored to defendant and become subject to control of the District Court, and (3) a prayer for return to the defendant. Judgment was rendered for the defendant, and the property replevied was. ordered returned to him. The case comes up on exceptions by the plaintiff to the decree of judgment and to the order of return. Writ, pleadings and evidence are made a part of the exceptions.

In the Summer and Fall of 1927 the defendant bought the re-

plevied automobiles from Eastman Kelleher Company, Inc., paying that Company ten per cent of the purchase price and financing the rest of the transaction by giving the plaintiff certain conditional sales agreements, called trust receipts, which were never anywhere recorded. The automobiles were taken to defendant's garage.

On February 18, 1928, the defendant filed its petition in bankruptcy, and adjudication was made on the same day, but both filing and adjudication were subsequent to the seizure under the writ. A Trustee was appointed March 16, 1928.

A day or two prior to the filing and adjudication, one Thomas Marshall, a field man for the plaintiff corporation, had had some conversation with Mr. Littlefield, Treasurer of the defendant Company, and also with its attorney, which at least indicated that the defendant Company was not sound financially, and the attorney testified that he told Mr. Marshall bankruptcy papers were prepared and that he was about to start to take them to Mr. Littlefield for signature. Mr. Marshall on the same day, February 17, 1928, called the Boston office of the plaintiff Company and "received authority from the office to replevin" the automobiles. On the same day he took out the writ of replevin on which this case is based, and after securing the services of a deputy sheriff, W. A. Small, handed him the writ. He found Mr. Small, the deputy, about 10.30 or 11 P.M., February 17, 1928, and in his presence the deputy from his own house, about midnight or past, called by telephone the home of Mr. Littlefield. The telephone conversation on the one side was all through the deputy, and on the other side was all through Mr. Littlefield's wife, Mr. Littlefield being present in the house. The deputy was not called as a witness.

In determining the rights of parties in this case, the first question to be considered is whether or not it was necessary for the plaintiff to make a demand. This question must be answered in the affirmative, as the evidence is conclusive and undenied that the defendant was rightfully in possession of the automobiles when the action was brought.

When one is lawfully in possession of goods, an action of replevin will not lie until after a demand. *Galvin* v. *Bacon*, 11 Me., 28; *Newman* v. *Jenne*, 47 Me., 520; *Automatic Sprinkler Company of America* v. *Central Amusement Company*, 176 N. W. (Ia.), 786;

*Hennessey Co.* v. *Wagner et al,* 220 Pac. (Mont.), 99, and this same view is recognized in an earlier case of *Seaver* v. *Dingley,* 4 Greenleaf, 306, cited in *Newman* v. *Jenne,* supra.

The next question to be considered is whether or not there was demand and refusal. For the purposes of this case, in determining when, if at all, a demand was made, the inquiry can be confined to the period following the time when the writ was made, taken by Mr. Marshall and handed to the deputy sheriff, W. A. Small.

Convincingly clear evidence warrants the conclusion that a demand was made some time during the telephone conversation which was of nearly an hour's duration. The trial of the case clearly proceeded on the assumption that there was a demand and that there was a refusal of that demand communicated to the plaintiff, the defendant conceding both demand and refusal. Nothing to the contrary appears in the trial of the case nor in argument of counsel, except as to whether the demand was made seasonably or not, so that in the consideration of the exceptions which are before this court the fact that a demand was made and that there was a refusal may be regarded as established.

· The real point involved, as far as a judgment ·for either the plaintiff or the defendant is concerned, is whether or not the writ of replevin in the present case was a provisional writ within the doctrine of *Littlefield et als* v. *Maine Central Railroad Company,* 104 Me., 126.

It appearing that possession was rightful and that consequently a demand was necessary, and it also appearing that a demand was made and refused, the next question is whether or not the demand was made seasonably.

While, generally speaking, the time when a writ is actually made with an intention of service is deemed the commencement of the action, it is well recognized law in this State and in Massachusetts that "where a replevin writ is made provisionally to be used only in case of the refusal of the defendant to surrender the property, the action is not prematurely brought." *Littlefield et als* v. *Maine Central Railroad Company,* supra (citing *O'Neil* v. *Bailey,* 68 Me., 429, and *Grimes* v. *Briggs,* 110 Mass., 446) ; *Badger* v. *Phinney,* 15 Mass., 359 ; *Seaver* v. *Lincoln,* 21 Pick., 267.

There is no direct evidence of what was said to the deputy

sheriff when the writ was placed in his hands, but it is not an uncommon practice, in the use of a replevin writ, to place it in the hands of an officer and tell him not to use it unless, after demand on the party having the goods, there is a refusal to surrender.

The circumstances in the case of *Cross* v. *Barger* (R. I.), 15 Atl., 69, an action of trover, were very similar to those obtaining in this case. Matteson, J., in his opinion, says, "The case at bar would be identical in principle with *Badger* v. *Phinney*, 15 Mass., 359; *Seaver* v. *Lincoln*, 21 Pick., 267, and *Grimes* v. *Briggs*, 110 Mass., 446, so far as the question we have considered is concerned, if it appeared from the statement of the evidence that when the writ was delivered to the officer he was instructed not to serve it until he had first demanded the goods from the defendants, and not to make service of it unless they refused to surrender the goods upon such demand. Inasmuch, however, as it does appear that the officer did make such a demand in behalf of the plaintiffs, and before serving the writ, we think we may fairly infer that the demand was so made in pursuance of instructions to that effect from the plaintiffs or their attorney. We are of the opinion, therefore, that such demand and refusal were prior to the commencement of the suit;***"

In this case the presiding Justice made no specific findings of fact, but in order for his decision to be conclusive and not open to exceptions there must be such evidence, with the legitimate inferences to which it is susceptible, viewed most favorably for the defendant, as can support the judgment. *Chabot & Richards Co.* v. *Chabot*, 109 Me., at p. 405.

From a careful examination of the instant case it appears to the court that only one legitimate inference can be drawn, from the evidence disclosed, viewed most favorably for the defendant, namely, that the demand was made in pursuance of instructions to the officer not to use or serve the writ until he had first demanded the goods from the defendant, and not to use it or make service until the defendant refused to surrender the goods on such demand. The evidence is convincing that a demand was made early during the telephone conversation between the deputy sheriff and Mrs. Littlefield and that the deputy sheriff waited nearly an hour after the demand until flat refusal finally came from Mr. Littlefield, who told

his wife to tell the deputy that he could not have the cars. The time between the demand and the refusal was at least partly occupied in an effort on the part of the Littlefields to get in touch with counsel, and they finally succeeded, and then, permission not having been given at the hearing to state what counsel said, there followed immediately the flat refusal as above. It is clear that further parley and effort to obtain a voluntary surrender of the automobiles would have been useless. The situation can not be reconciled with any conclusion other than that the deputy sheriff had been instructed not to use his writ unless there was a demand on and a refusal from the defendant, as action under the writ followed at once when the refusal was made known.

Our conclusion is, therefore, that the action was not prematurely brought and that the demand was seasonably made, and that the plaintiff's exceptions to the judgment for the defendant should be sustained. Inasmuch as the case must go back for a new trial, it becomes unnecessary to consider the exceptions to the order for return of the goods to the defendant.

*Exceptions to judgment for defendant sustained.*