JOHN E. MITCHELL *vs.* FRANCES HAMMOND MITCHELL.

Hancock.        Opinion, March 23, 1940.

408

*Deasy, Lynam, Rodick & Rodick,* for plaintiff.
*Blaisdell & Blaisdell,* for defendant.

SITTING: BARNES, C. J., STURGIS, THAXTER, HUDSON, MANSER, WORSTER, JJ.

WORSTER, J.    On exceptions. Libel as for divorce for annulment of marriage on the ground of alleged fraud, deceit and duress, brought under the provisions of R. S., Chap. 73, Sec. 15.

It was heard by the court, without the assistance of a jury, with the right of exceptions reserved to both parties on questions of law.

Decision below was for the libelee, and the libel was dismissed with a ruling, briefly stated, that the libelant must fail "for two reasons, either of which is sufficient"—first, because he had not shown by a fair preponderance of the evidence that he had been induced by fraud to marry the libelee; second, because the alleged matters relied on had been already "adjudicated in the Florida Courts."

The case is here on libelant's exceptions to that decision, to the findings made, and to the omission to make other requested findings.

The court below found that:

"The libellant and libellee are both residents of Hancock County, Maine.

"The history of the case, according to the evidence is, that the parties, about a year prior to the latter part of April or the early part of May 1936, commenced keeping company, and first had sexual intercourse the latter part of April or the early part of May, 1936.

"During the summer of 1936 the libellee notified the libellant that she was pregnant, and he agreed to marry her, but did not do so. That fall or winter the libellant went to West Palm Beach, Florida, and later the libellee went there. On December 12, 1936 the libellee had the libellant arrested on a bastardy process, and he went to jail. After staying in jail a short time, he married the libellee and was released. The parties have never cohabited since the marriage and the marriage has never been consummated.

"In January 1937, after the birth of the child, the libellant brought a Bill in Equity in the Courts of Florida, asking that the marriage be declared null and void, because he went through the marriage ceremony on account of fear, and that he never gave his consent to the marriage ceremony. That Court dismissed the Bill.

"In the action at bar, the libellee answers and denys that she induced the libellant by threat, duress, fraud or false state-

ments to marry her, and says when he married her he acted freely, and she sets up as a further defense the judgment of the Florida Court cited above."

Passing to the reasons given by the presiding justice for dismissing the libel, let us first consider the ground last stated in the decree, which reads as follows:

"SECOND: The subject matter litigated in the Florida Court was annulment of marriage. That same subject is being litigated here. The libellant contends that fraud was not relied upon in the Florida proceedings. It is immaterial whether it was or not. Fraud could have been set up in the Bill brought there. And the test is, what could have been set up, not what was set up.

"The Court finds as a matter of law that this matter was adjudicated in the Florida Courts."

Have the matters relied on by the libelant in the instant case been already judicially decided between the parties?

Perhaps this question may be better discussed by dividing it into two parts:

1. Have the matters relied upon by the libelant to support his allegation of duress been adjudicated?

It is a general rule that parties are estopped from litigating issues which had been previously and finally decided between them on the merits of the controversy by a court of competent jurisdiction. *Fuller* v. *Eastman*, 81 Me., 284, 17 A., 67; *Morrison* v. *Clark*, 89 Me., 103, 107, 35 A., 1034; *Parks* v. *Libby*, 90 Me., 56, 57, 37 A., 357; *Burns* v. *Baldwin-Doherty Co.*, 132 Me., 331, 170 A., 511.

And this rule applies to proceedings for annulment of marriage. *Sargent, Petitioner*, 115 Me., 130, 98 A., 117.

In the instant case, the libelant charges in his libel, among other things, that this marriage was obtained by duress. This is the same issue that was tried and decided on the merits of the controversy, between the same parties, in the case heard in Florida, and the libelant is estopped from now presenting the same claim for judicial determination.

Moreover, his attorney concedes that the question of duress is not open to him here, and so this point may be considered as abandoned by him.

2. Have the matters relied upon by the libelant to support his allegation of fraud and deceit been adjudicated?

The fraud and deceit claimed by the libelant is that he was induced to marry the libelee because of her alleged false and fraudulent misrepresentations to him that he was the father of the child with which she was pregnant, then believed and relied on by him, but which he claims he has since ascertained is false.

In the bill filed in the Florida court appear allegations to the effect that, though the defendant claimed at the time of the marriage that the plaintiff was the father of the child with which she was then pregnant, yet he was not the father and could not have been.

On the allegation that the libelant was not the father of the child, issue was there taken by the defendant, and much evidence was offered as to whether or not the child to whom she gave birth was a full-term child, but neither the master nor the court decided that point.

Nevertheless, the libelee contends, and the court below ruled, that the issue of fraud and deceit now raised could have been decided in that case, so is *res judicata* here, and she invokes the following rule laid down in *Ketch* v. *Smith*, 128 Me., 171, 173, 146 A., 247:

"It is accepted law in this State, that, conceding jurisdiction, regularity in proceedings, and the absence of fraud, a judgment between the same parties is a final bar to any other suit for the same cause of action, and is conclusive not only as to all matters which were tried, but also as to all which might have been tried in the first action."

However, the general rule relied on by the libelee has no application to a case where the issue was not decided by the trier of facts, but expressly reserved by him for hearing in another case. 34 Corpus Juris, page 797; 24 Am. & Eng. Encyc. of Law (2 ed.), 776; *Martin et al.* v. *Turner* (Ky. 1909), 115 S. W., 833; *Burns et al.* v. *Nichols* (Tex. 1918), 207 S. W., 158; *Hardin* v. *Hardin et al.* (S. D.), 129 N. W., 108, 111.

Even if such a reservation of the issue for another hearing was erroneous, and actually resulted in splitting the plaintiff's cause of action, that would not bar him from again presenting the question for decision.

An erroneous judgment of a competent court having jurisdiction of the parties and subject matter remains binding on the parties until reversed. *Hardin* v. *Hardin et al.*, supra.

In the Florida case, the master appointed by the court to take the testimony, stated in the report he made to the court, which was afterwards accepted, that:

"There has been a great deal of testimony before the Master on the necessary period of gestation, which makes some question about the paternity of the child. However, the Master does not consider it necessary that the Court pass upon this question in this particular case."

The reason for this summary dismissal of this evidence from consideration is not stated. The ruling does not purport to be based on the ground that the charge of alleged fraud and deceit was not properly presented by the pleadings. The ruling is an absolute one, and, while informal, plainly indicates that the question of the paternity of the child was not passed upon in decision, but was expressly reserved for another hearing. It is useless to discuss whether the master should have ruled on the question whether the claim of fraud and deceit was properly presented, and if so, to have decided that issue; or whether final decision of the marriage status could have been made without deciding that question; or whether failure to decide it resulted in splitting the plaintiff's cause of action. The fact remains that the master did not decide it but expressly reserved it, and the libelant is not now estopped from presenting the same issue here for decision.

Therefore, the ruling of the court below "that this matter was adjudicated in the Florida Courts" was erroneous in so far as the charge of fraud and deceit is concerned.

But that is not decisive here. That was not the only reason given by the court for the decision rendered. And the libelant, who was afforded a full hearing below on the merits of the allegation of fraud and deceit, has no cause for complaint if his libel was properly dis-

missed for failure to prove that charge, for any of the reasons stated in the decree. It will be necessary for us to consider only one of those reasons; and that one, stated substantially, is that the libelant failed to show that he entered into this marriage on account of the libelee's representations that he was the father of her then unborn child.

There is a common-law presumption of legitimacy of a child born in wedlock, although conception took place before marriage. *Reynolds* v. *Reynolds*, 3 Allen, 605, 610; *Wallace* v. *Wallace*, 137 Iowa, 37, 14 L. R. A. (N.S.), 544, 126 Am. St. Rep., 253, 114 N. W., 527, 530, 15 Ann. Cas., 761.

But that presumption may be overcome by evidence, and here the libelant contends that he has proved that he is not the father of the child; and that he was induced by fraud to marry the libelee. Fraud is not to be presumed, and the burden is upon the libelant to establish it. *Mitchell* v. *Lloyd*, 126 Me., 503, 140 A., 182.

If a man is induced to marry a woman who he knows is pregnant, believing and relying upon false and fraudulent statements made to him by her to the effect that he is the father of the child with which she is pregnant, when, unknown to him, her pregnancy was caused by another, the marriage may be annulled for fraud, provided it has not been ratified or confirmed. *Jackson* v. *Ruby*, 120 Me., 391, 115 A., 90, 19 A. L. R., 77; *Mitchell* v. *Lloyd*, supra; *Whitehouse* v. *Whitehouse*, 129 Me., 24, 149 A., 572.

The mere fact that the husband had had sexual intercourse with his wife before they were married will not bar him from seeking such annulment. *Jackson* v. *Ruby*, supra; Compare with notes, 11 A. L. R., 931, and 19 A. L. R., 80.

Although this proceeding for annulment of a marriage is based upon alleged fraud and deceit, yet it is unlike an ordinary action of deceit. In an ordinary case of deceit, only the parties are interested, while in this proceeding for annulment of marriage, not only the parties themselves are concerned; but society as a whole, and the child whose status might thereby be affected, have a very vital interest in the case; nevertheless, the rules of law generally applicable to ordinary actions of deceit may be applied. *Reynolds* v. *Reynolds*, supra; *Mitchell* v. *Lloyd*, supra; 18 R. C. L., 413.

To recover in an action for deceit, something more than the fals-

ity of the statement relied on must be shown. Each and every other element required to constitute deceit must be proved, and when it is apparent that any one of them has failed of proof, the plaintiff is not entitled to relief. It then becomes entirely unnecessary to decide whether or not the other required elements have been established by the evidence.

Now, in order for the libelant to prevail in this case on the ground of deceit, the burden is upon him to prove, among other things, that at the time of the marriage he believed to be true the statement made to him by the libelee as to the paternity of the child, that he relied and acted upon it, and was thereby, to some extent at least, induced to and did marry her; although he was not required to show that her statement was the sole or even principal reason for the marriage, (*Braley* v. *Powers*, 92 Me., 203, 210, 42 A., 362). *Matthews* v. *Bliss et al.*, 22 Pick., 48; *Hayward* v. *Passaic National Bank & Trust Company*, 120 N. J. E., 512, 186 A., 728, 730; *Long* v. *Woodman*, 58 Me., 49, 52; *Severance* v. *Ash*, 81 Me., 278, 17 A., 69; *Hotchkiss* v. *Coal & Iron Company*, 108 Me., 34, 41, 78 A., 1108; *Crossman* v. *Bacon & Robinson Company et al.*, 119 Me., 105, 109, 109 A., 487; *Richards* v. *Foss et al.*, 126 Me., 413, 415, 139 A., 231.

A false statement, unbelieved, and not relied or acted upon, and having no influence on decision, furnishes no ground for relief in a case of alleged deceit. *Butler* v. *Martin*, 247 Mass., 169, 173, 142 N. E., 42; *Matthews* v. *Bliss*, supra.

Even if, for the purpose of decision on another point, it should be assumed, but not decided, that the statement of the libelee as to the paternity of the child was false, yet, in order to prevail, the libelant must still prove that at the time of the marriage he believed the statement was true, relied thereon and was thereby, to some extent at least, induced to marry the libelee.

In *Patten* v. *Field*, 108 Me., 299, 81 A., 77, the Court said:

"It may be conceded that a jury would not have been justified in this case in finding that the defendant did not make a false representation of a material fact, knowing it to be false, and with intent that it should be acted upon by the plaintiff, but can it be held that a jury would not have been justified in finding that the plaintiff did not reasonably believe the al-

leged representations, and did not rely upon them, and was not induced by them to pay . . . To make the question before us more concrete, assume that a jury had made a special finding that at the time the plaintiff signed the $800 note he did not believe the defendant's wool and sheep story, and was not induced thereby to sign the note, but signed it because he was personally interested to have the $1000 paid and thereby save the option, and expected the note could be paid from sales of stock, would such finding by a jury be sustainable in this case? We are constrained to the conclusion that it would."

Whether the libelant in this case believed the statement of the libelee as to the paternity of the child, relied on it, and was thereby somewhat influenced to marry her; or whether he married her for the sole and only purpose of obtaining his release from arrest without having had, at the time of marriage, the slightest belief in her statement, and without having placed any reliance whatsoever thereon, was a question of fact for the trial court. Decision was against the libelant, and the court added: "From the evidence one would be justified in believing that he entered into the marriage solely for the purpose of freeing himself from jail."

Findings of fact by the court, without the assistance of a jury, are final and conclusive if supported by evidence of real worth and probative value. *Matthews* v. *Bliss*, supra; *Patten* v. *Field*, supra; *Ayer* v. *Harris*, 125 Me., 249, 132 A., 742; *Bond* v. *Bond*, 127 Me., 117, 141 A., 833; *Ayer* v. *The Androscoggin and Kennebec Railway Company*, 131 Me., 381, 384, 163 A., 270; *Langevin, Admr.* v. *Prudential Insurance Company*, 132 Me., 392, 394, 171 A., 392.

Exceptions do not lie to the findings of fact by a single justice unless found without evidence or contrary to the only inferences to be drawn from the testimony (*Ayer* v. *Harris*, supra; *Pratt* v. *Dunham*, 127 Me., 1, 3, 140 A., 606), when viewed in the light most favorable to the libelee. *General Motors Acceptance Corporation* v. *Littlefield, Crockett Company*, 128 Me., 388, at 392, 147 A., 868.

But, the libelant excepts because, he contends, the findings in this case are not supported by evidence, and so are erroneous as a matter of law, and exceptionable.

If a finding of fact by the court is not supported by evidence, or

if the only inference to be drawn does not support the decision, then "the finding is an erroneous decision of the legal conclusions to be drawn from the evidence, and is error in law, to correct which exceptions will lie." *Chabot & Richard Co.* v. *Chabot*, 109 Me., 403, 405, 84 A., 892; *Weeks* v. *Hickey et al.*, 129 Me., 339, 342, 151 A., 890.

Whether the ruling of the court to the effect that the libelant had failed to show he entered into the marriage on account of the representation of the libelee as to the paternity of the child is a finding of fact, or whether it is a mere legal conclusion from facts (as was held in *Palmer et al.* v. *First Minneapolis Trust Company*, 179 Minn., 381, 230 N. W., 257), is immaterial, for, in either event, it presents the question "whether as a matter of law the evidence, which is made a part of the exceptions, warrants the decree." *Michels* v. *Michels*, 120 Me., 395, 396, 115 A., 161.

The record shows that the libelant testified, in substance and effect, that he voluntarily married the libelee upon her representation that he was the father of her child; that he believed that representation at the time of the marriage; that he acted upon it; and that he would not have married her if he had not believed it.

This testimony of the libelant is not directly contradicted. The testimony of a witness as to his belief and motive is not usually, if ever, susceptible of direct contradiction. The fact that the testimony of a party to a suit is not directly contradicted does not necessarily make it conclusive and binding upon the court. Of course it is not to be utterly disregarded and arbitrarily ignored without reason. It should be carefully considered and weighed with all of the other evidence in the case, and with all of the inferences to be properly drawn from facts established by the evidence; but if, on the whole case, it appears that such testimony is untrue, the court is not required to put the stamp of verity upon it, merely because it is not directly contradicted by other testimony. *Lang* v. *Ferrant*, 55 Minn., 415, 57 N. W., 140; *Zimmerman* v. *Bannon et al.*, 101 Wis., 407, 77 N. W., 735; *Blount* v. *Medbery*, 16 S. D., 562, 94 N. W., 428; *Bremer* v. *Haag*, 151 Ia., 449, 131 N. W., 667; *Harris* v. *Barret et al.*, 75 N. J. E., 386, 72 A., 956; *J. S. Brown & Bros. Mercantile Co.* v. *Sherrod et al.*, 53 Wash., 132, 101 P., 481; *Guinan* v. *Famous Players-Lasky Corporation*, 267 Mass., 501, 518, 167 N. E., 235; *Ashapa* v. *Reed*, 280 Mass., 514, 182 N. E., 859; *Logue* v.

*The Grand Trunk Railway Company*, 102 Me., 34, 65 A., 522; *L'Houx* v. *Union Construction Company*, 107 Me., 101, 77 A., 636, 30 L. R. A. (N. S.), 800; *Hughes* v. *Hughes*, 109 Me., 564, 84 A., 647.

In *Logue* v. *The Grand Trunk Railway Company*, supra, it was held that the testimony of a witness that he tied a rope around a post was disproved by the circumstances of the case, although there was no direct testimony to the contrary.

In *L'Houx* v. *Union Construction Company*, supra, the uncontradicted testimony of the plaintiff in a negligence case, that he did not know the effect of a heavy blow with a hammer on an iron pipe, did not warrant the jury in finding that he did not assume the risk, in the circumstances of the case.

In *Hughes* v. *Hughes*, supra, the *per curiam* opinion is more fully set forth in the Atlantic Reporter, in which it is stated:

"At this trial no evidence for the defendants was introduced. But courts are not compelled to accept unreasonable and incredible evidence as a sufficient basis for a legal judgment, simply because it is not contradicted by direct and positive testimony."

Cases showing the divergent views on this subject are collected in 8 A. L. R., 796; and a discussion of the same topic is found in 20 Am. Jur., 1031.

If it appears that a party's testimony is inconsistent with his former contention on the same point, the court may take that fact into consideration, giving to it only such weight, if any, as may be proper in the circumstances of the case (70 C. J., 771); and for the purpose of showing such inconsistency, the pleadings in another case between the same parties may be resorted to. 20 Am. Jur., 543; Notes in 14 A. L. R., 51, and 90 A. L..R., 1397; 1 Greenleaf on Evidence (14th ed.), Section 195; 2 Wigmore on Evidence, Section 1066.

A reference to the bill in equity filed by the libelant in the Florida case discloses that he there contended, among other things, that "at the time of the said marriage ceremony his acts were brought about through the criminal prosecution and threats of further criminal

prosecution;" that he did not consent to the marriage, but that it "was brought about without his consent, through . . . duress and coercion."

While this bill was not signed by the libelant himself, but signed for him by his solicitor, yet the libelant must be deemed to have adopted the allegations just quoted as his own statement of the case, for they set forth the very foundation upon which his whole claim of duress and coercion rested, and upon which he actually prosecuted his case to final judgment.

In *City of Rockland* v. *Farnsworth*, 89 Me., 481, 484, 36 A., 989, the Court said:

"The doctrine seems to be settled that pleadings in another suit may be used as admissions of the party, where they bear upon the material issues on trial and appear to have been made by his direction or adoption, shown 'by prosecuting the action upon them, as the foundation of his claim.' "

The libelant's testimony in the instant case, that he married the libelee *voluntarily* (although he claims that such voluntary action was induced by fraud), is plainly inconsistent with the contention that he did not consent to the marriage, which he says was brought about without his consent, through duress and coercion, as declared in his bill in equity filed in the Florida case.

Even if it should be assumed that in September, 1936, the libelant was convinced of the truth of the libelee's statement as to the paternity of the child, that he believed and relied on it when he agreed that he would marry her on October the fifteenth of that year, yet the record plainly discloses that he did not continue to believe it up to the time of their marriage on December 12, 1936.

After he talked with his father and mother, he broke off that engagement, and refused to go through with the marriage ceremony on October 15, because, he testified, "I doubted whether I was the father," and he wrote to the libelee, expressing his doubts to her. The libelee testified that "he wrote to me and asked me to prove to his father and mother that he was the father of the child." This he does not admit. In any event, before the birth of the child, the libelee wrote the libelant a letter, which he offered in evidence, and which reads, in part, as follows:

"Your letter did not hurt me since I am passed the stage where anything can hurt me.

"There is no way that I could prove anything if it has to be proved. Not even a blood test is a sure proof and that would be some time from now so we will just drop the subject . . ."

And, according to his own testimony, the libelant had decided, before his arrest on the bastardy warrant, that he would not marry the libelee. However, when he was arrested on December 12, 1936, before the birth of the child, he suddenly changed his mind and married her, a few hours after his arrest. It does not appear from the record that any new facts had come to light, or any new circumstances had presented themselves, between the time the libelant received that letter from the libelee and the time the bastardy warrant was issued, to cause him to change his mind. He still had that letter in which the libelee wrote: "There is no way that I could prove anything if it has to be proved," and yet he married her.

Nevertheless, it is argued for him that at the time of marriage he believed he was the father of the child, and the libelant himself testified as follows:

"Q. When did you become persuaded that you were the father of the child?
A. When I was served the warrant in Florida there.
Q. When you were served with a bastardy warrant in Florida?
A. Yes, sir.
Q. And why? What about that persuaded you?
A. Well, if I wasn't the father she wouldn't go to all the trouble, bringing it to law, and have me arrested."

The weight of this evidence was for the presiding justice (*Pettengill* v. *Shoenbar*, 84 Me., 104, 24 A., 584; *Sanfacon* v. *Gagnon*, 132 Me., 111, 113, 167 A., 695), and in passing upon it, he had the right to take into consideration not only the appearance of the libelant while on the witness stand, and his manner of testifying, but also the probability or improbability of his statement in the light of all the other facts and circumstances established by proof.

The credibility of the libelant was also for the trier of facts (*Bond* v. *Bond*, supra; *Sanfacon* v. *Gagnon*, supra). It was for him

to decide whether the libelant's testimony as to his belief in and reliance on the libelee's statement as to the paternity of the child, at the time of their marriage, truly disclosed the state of his mind at that time, or whether it merited unbelief. After a careful consideration of all of the evidence, we cannot say that the ruling of the court below on this point was erroneous.

A finding of fact, unsupported by evidence, not affecting the decision, is no ground for reversal. Even if the court erred as to the length of time the parties had been "keeping company," yet that would not affect the result here. There is no claim that they had sexual intercourse before the latter part of the month of April, 1936, and the libelant claims that it did not begin until about May 4 of that year. The libelant is not aggrieved by this finding.

The finding that the marriage has never been consummated, in the light of the record submitted, must be held to mean that the marriage has never been consummated by coition, but "coition is unnecessary in the case of a ceremonial marriage." *Brooks-Bischoffberger* v. *Bischoffberger*, 129 Me., 52, 149 A., 606.

The libelee testified positively that the libelant is the father of her child, and that she had had no sexual relations with any man other than the libelant, but the above-stated conclusions render it unnecessary to review her testimony, or that of the physicians, or to decide whether she gave birth to an eight-months child or a full-term child, or even to pass upon the question as to whether her statement as to the paternity of the child was true or false.

The libelant's exception to the effect that there was no substantial evidence upon which the judgment of the court could be based, and that there was no evidence or any inference which could be drawn from the evidence upon which to base a dismissal of the libel, cannot be sustained.

The libelant also excepts to the court's omission to make findings of fact, which had been asked for.

At the hearing, the libelant, in writing, requested that the "Court may in its decision and finding set forth fully and completely the reasons for the same and may make specific findings of fact upon the following points, and set forth the evidence upon which it bases its findings." This request was followed by a recital of six questions of fact, which need not be stated here, none of which were specifically answered.

In the absence of statute or rule of court, the presiding justice, sitting without a jury, is not required to make special findings of fact. *First National Bank* v. *Bank*, 152 Ill., 296, 301, 38 N. E., 739, 26 L. R. A., 289, 43 Am. St. Rep., 247; *Ashapa* v. *Reed*, supra; *James Elgar, Inc.* v. *Newhall*, 235 Mass., 373, at 377, 126 N. E., 661; *Katzeff* v. *Goldman et al.*, 248 Mass., 365, at 368, 142 N. E., 924; *Fred W. Mears Heel Co., Inc.* v. *Walley*, 71 Fed. (2d.), 876; see, also, comment on the common-law rule, in *Tilton* v. *Sharpe*, 84 N. H., 393, 151 A., 452.

Much less is he required to set forth the evidence upon which the findings were based, or to give in detail the reasons for decision rendered.

But, the libelant contends that he is entitled to findings of fact under the provisions of R. S., Chap. 91, Sec. 58, and Chap. 62, Sec. 63. He also relies on the case of *Hamilton et al.* v. *Caribou Water, Light & Power Co.*, 121 Me., 422, 117 A., 582. These citations are not in point.

Chapter 91, Sec. 58, requiring findings of fact when requested, is a statutory rule of practice in equity cases; while Chap. 62, Sec. 63, and *Hamilton et al.* v. *Caribou Water, Light & Power Company*, supra, deal with practice before the Public Utilities Commission; whereas the libel in the instant case is neither a proceeding in equity nor before the Public Utilities Commission, but is a purely statutory proceeding.

In 38 Corpus Juris, at page 1348, the general rule is laid down that:

> "The action for annulment is strictly an action neither at law nor in equity, being a proceeding sui generis originally cognizable in the ecclesiastical courts, and later, under common law, in the chancery courts in England. Unless otherwise provided by statute, the nullity proceeding in a state court should be by a bill in equity . . ."

But it is otherwise provided by statute in this state. A provision in the Maine Revised Statutes in the chapter dealing with divorces, reads as follows:

> "When the validity of a marriage is doubted, either party may file a libel as for divorce; and the court shall decree it

annulled or affirmed, according to proof . . ." R. S., Chap. 73, Sec. 15.

Proceedings for such an annulment are not brought in this state by a bill in equity, filed on the equity side of the court, but by a libel as for divorce for annulment of marriage as provided by statute. And since, by legislative enactment, the validity of a marriage is to be tested and determined at a hearing on a libel as for divorce, it follows that in such a proceeding the rules of practice in libels for divorce are to be followed so far as they are applicable. See *Piper* v. *Piper* (Wash.), 91 P., 189, 190.

A proceeding for annulment of marriage has been held to be a "divorce suit" under some statutes. *Foss* v. *Foss*, 12 Allen, 26, 27.

But surely a divorce suit is not a proceeding in equity. *Steele* v. *Steele*, 35 Conn., 48, 53.

Undoubtedly, equitable considerations prevail in hearing a libel as for divorce for annulment of marriage alleged to have been procured by fraud; but the application of equitable principles does not change the form of action. Equitable considerations prevail in some actions at law without converting the proceedings into equity cases.

In considering an action of assumpsit for money had and received, Mr. Justice Cornish, in *Dresser* v. *Kronberg*, 108 Me., 423, at 424, 81 A., 487, said:

"Though the form of the procedure is in law it is equitable in spirit and purpose . . ."

It is well settled that trustee process is created and regulated by statute (*Hibbard* v. *Newman et al.,* 101 Me., 410, 414, 64 A., 720), but in *Harlow* v. *Bartlett et al.,* 96 Me., 294, at 296, 52 A., 638, Mr. Justice Whitehouse said:

"A process of this kind, though in form an action at law, is in substance an equitable proceeding to determine the ownership of a fund in dispute."

And, in the same opinion, quoting from another case, he said:

" 'As between the plaintiff and claimant equitable considerations must prevail so far as the nature of the process will admit.' "

So, in the instant case, "equitable considerations must prevail so far as the nature of the process will admit," but not to the extent of converting a libel as for divorce for annulment of marriage into a bill in equity to be governed by the rules of practice peculiar to equity.

Since the rules of practice in equity cases do not apply to a libel as for divorce for annulment of marriage, it follows that the provisions of Chap. 91, Sec. 58, requiring findings of fact to be made and filed in equity cases, when requested, has no application here. Much less do the rules of practice before the Public Utilities Commission apply, and therefore Chap. 62, Sec. 63, and the case of *Hamilton et al.* v. *Caribou Water, Light & Power Company*, supra, are not in point.

There being no statute or rule of court in this State requiring the presiding justice to make and file findings of fact in such a case as this, the libelant's exception on this point also, is overruled.

No point is made of the failure to affirm the marriage in the decree, but even if the point had been made, it would not have availed the libelant anything. While, according to the better practice, the marriage should have been affirmed (*Brooks-Bischoffberger* v. *Bischoffberger*, supra), yet the entry of "Libel dismissed," after a full hearing on the merits of the controversy, constituted a final judgment disposing of the case, and will bar further action between the same parties for the same cause, even although the statute was not literally followed. *Sargent, Petitioner*, supra.

It is unnecessary to consider the other exceptions because the conclusion at which we have arrived completely disposes of the case.

*Exceptions overruled.*